—— [Civ. No. 771. Third Appellate District.—March 6, 1911.]

## CHARLES E. NAYLOR, Jr., Respondent, v. FRANK P. ADAMS, Appellant.

APPEAL — NEW METHOD — NONCONFORMITY OF TRANSCRIPT TO RULES—
MOTION TO DISMISS.—It is held on the appeal taken according to
the new method under sections 953a, 953b and 953c of the Code of
Civil Procedure, that but for the fact that the record is not so
voluminous or bulky as to require in its examination more than ordi-
nary labor, a motion of the respondent to dismiss the appeal for
serious nonconformity of the transcript to rules 7 and 8 of the
supreme court would, without reluctance, be granted. Rule 8 is re-
produced, to which the transcript does not approximately conform.

ID.—RULING AGAINST DISMISSAL IN THIS CASE NO GUIDE AS PRECEDENT.
It is held that the ruling against dismissal in this case is no guide
as a precedent for any future case showing inexcusable breach of
the rules of the court, such as appears in this case.

ID.—ACTION BY ASSIGNEE OF BROKER'S COMMISSIONS ON EXCHANGE OF
REAL ESTATE—SUPPORT OF FINDINGS.—In an action by the plaintiff
as an assignee of broker's commissions earned in the exchange of
real estate, it is held that defendant's letters to one member of the
firm constituting plaintiff's assignors, who personally negotiated for
exchange, clearly show defendant's employment of him for that pur-
pose, and support the findings both as to the employment and the
amount of the broker's commissions earned thereunder and recov-
ered by plaintiff.

ID.—BASIS OF COMMISSIONS—PART CASH AND PART EXCHANGE.—Where
the commissions agreed upon were to be more for cash than for a
mere exchange, and the terms agreed upon were part exchange and
part cash, the court properly computed the commissions upon that
basis.

ID.—TERMS OF CONTRACT MODIFIED—RECOVERY LIMITED TO COMMON
COUNT PLEADED.—In view of the modification of the terms of the
contract for sale or exchange, and the basis of compensation being
partly for cash and partly for exchange, the recovery was limited
to the common count pleaded in *indebitatus assumpsit* for the sum
recovered.

ID.—SETTLED RULE—MODIFICATION OF AGREEMENT—FORM OF ACTION.—
It is a settled rule in this state, that where the terms of a special con-
tract have been varied or modified by the agreement of the parties,
the action for the amount earned should be in the form of *indebi-
tatus assumpsit,* and not upon the contract.

ID.—CONTRACT AS EVIDENCE.—In such case the contract may be introduced
in evidence by either party as an admission of the standard of value

or as proof of any other fact necessary to the recovery, and should be allowed to go to the jury whenever it can aid them in attaining a sound conclusion.

ID.—COUNT IN INDEBITATUS ASSUMPSIT—CONTRACT SUFFICIENT EVIDENCE OF REASONABLE VALUE.—In support of the count in *indebitatus assumpsit,* it is not essential that witnesses shall be called to prove that the services were reasonably worth the amount recovered. The contract itself was competent evidence of the standard of value, and was sufficient to authorize the court to fix the sum that it deemed, under the circumstances, would amount to reasonable compensation.

APPEAL from a judgment of the Superior Court of Tehama County, and from an order denying a new trial. John F. Ellison, Judge.

The facts are stated in the opinion of the court.

M. J. Cheatham, for Appellant.

Naylor & Riggins, for Respondent.

HART, J.—An opinion in this cause, affirming the judgment and order of the court below, was filed by this court on December 16, 1910. A petition for a rehearing was granted by this court on the grounds: 1. That the case had not, before the filing of said opinion, been submitted on the merits, the only question then under submission having arisen on a motion to dismiss the appeal for reasons which will later appear; 2. That the writer of the opinion fell into error as to certain testimony.

Upon a reconsideration of the case we have found no reason for receding from our former conclusion that the evidence is sufficient to support the findings that a contract was entered into between Adams and Stanley, by which the latter was employed to secure a purchaser of the former's land; that Stanley was to receive for that service certain compensation, of which more will appear hereafter in this opinion; that Stanley did secure such purchaser, and that Adams finally disposed of the land to the purchaser so secured.

We here adopt a part of the former opinion:

"This is an action by plaintiff to recover the sum of $600 for commissions alleged to have been earned by his assignors

for consummating a real estate deal by which defendant and one Draper exchanged properties.

"The claim was assigned to plaintiff by the real estate firm of Murdock & Son and one Herbert Stanley, a member of said firm, who personally managed the transaction.

"The case was tried by the court and plaintiff awarded judgment in the sum sued for.

"This appeal is from said judgment and the order denying defendant a new trial.

"Respondent has filed a motion to dismiss these appeals on the ground that the transcript does not conform to the requirements of rules 7 and 8 of the supreme court, and but for the fact that the record is not so voluminous or bulky as to require in its examination more than ordinary labor we would without the least reluctance grant the motion.

"The transcript was prepared according to the method prescribed by sections 953a, 953b and 953c of the Code of Civil Procedure. Rule 7, *supra,* provides that when the transcript is prepared in accordance with the sections of the Code of Civil Procedure referred to, 'the paper on which the same is written and the backs for binding the same must not exceed ten inches in length and eight inches in width, and the same must be bound together on the left-hand side.'

"The transcript here is somewhat larger in size than as prescribed by the foregoing rule, but we might perhaps pass this objection to the consideration of the record without notice but for the flagrant violation of rule 8 in the preparation of said transcript.

"In the hope that it may be of advantage to those of the profession who appear to be at all times otherwise too much occupied to look up and examine the rules laid down by the supreme court governing the appellate practice in this state, we here reproduce rule 8: 'The pleadings, proceedings and statement shall be chronologically arranged in the transcript, and each transcript shall be prefaced with an alphabetical index, specifying the folio of each separate paper, order, or proceeding, and of the testimony of each witness; and the transcript shall have at least one blank fly-sheet cover. The chronological arrangement of the several parts of the transcript, and a strict compliance with the other requirements of this rule, will be exacted of the appellant or party filing the

record here in all cases, by the court, whether objection by the opposite party be made or not; and for any failure or neglect in these respects, which is found to obstruct the examination of the record, the appeal may be dismissed.'

"The transcript here does not even approximately conform to the requirements of said rule. In the first place, the proceedings constituting the record are not chronologically arranged in the transcript. The transcript begins, without any introduction, with the testimony taken. There were introduced at the trial some eighteen exhibits, which were filed and marked as exhibits, consisting of letters between the parties evidencing the agreement, and said exhibits, as well as some mortgages and deeds also received in evidence, in lieu of being inserted in the transcript, as they should have been, are lumped together in an appendix of some fifty pages following the testimony. Moreover, the transcript is not marked by folios, as prescribed by rule 8, and, consequently, the index prefacing the same specifies the pages only, and even then does not designate the pages on which the exhibits may be found.

"While there is absolutely no excuse for presenting this or any record in the shape in which we find it, we will, nevertheless, as already intimated, consider the case on its merits. We will, therefore, deny the motion to dismiss with the warning that the conclusion thus announced as to said motion is not to be accepted as a precedent for the course of this court in the future as to similar motions in which there is merit for the reasons upon which the present motion is urged."

In the year 1909 said Herbert Stanley entered into negotiations with defendant for the purpose of securing authority as agent to sell the latter's land, consisting of some sixteen hundred acres situated in Tehama county. Stanley addressed a letter to Adams inquiring whether the latter's ranch was for sale or exchange, and requesting him to state his price for said ranch, subject to the five per cent commission ordinarily allowed for such services. Adams' reply was that his ranch comprised sixteen hundred acres of land, for which he would take $10 an acre in cash or $12.50 per acre on an exchange for other property. Upon the receipt of this letter Stanley undertook to sell or exchange Adams' ranch, and thereafter, Stanley having interested different persons in the

proposition, a series of letters passed between Adams and Stanley concerning the proposed sale and the commission which Stanley was to receive should he succeed in disposing of the ranch.

On one occasion Stanley addressed a letter to Adams in which he advised him that he (Stanley) could make a deal by which the ranch could be exchanged for certain Alameda real estate. After looking into and considering this proposition, Adams wrote a letter to Stanley, among other things, saying: "I will say in answer to your letter offering the Alameda property that I think it is inflated, and I will not pay commissions on inflated property in full. Now, to be candid with you, I will tell you what I think is fair. I will pay $800 for a cash sale at $10 per acre, or I will pay $400 for an exchange of property that I will consider a fair exchange. That is five per cent on value. I think it is not right to ask anybody to pay on inflation."

Thereafter, Stanley interested a Mr. T. B. Draper, of Oakland, in the Adams property, and together they went to Tehama county and visited and inspected said property. Draper was the owner of several pieces of improved real estate in the city of Berkeley. After Stanley and Draper returned to Oakland from Tehama county, the former addressed a letter to Adams, proposing to give in exchange for his ranch said real estate of Draper, which was valued at $20,000. This proposition involved a straight trade—that is, it was to be an even exchange of the two properties without any money being paid by the one to the other. The exchange on this basis did not take place, as we shall presently see.

Stanley and Adams thereafter exchanged letters regarding the commissions which Stanley was to receive in the event the trade between Adams and Draper was effected.

Adams, on the urgent request of Stanley, finally visited Berkeley and looked over and examined Draper's properties with a view of exchanging, upon some basis, his ranch for said properties. Stanley's letter, asking Adams to make said visit, read, in part, as follows: ". . . But I will say now, come down *at once,* and if you do not consider that I have earned $800, when you see property here worth $20,000, for your ranch, I will take $400."

Adams, at the time of inspecting the Draper real estate, did not appear to be favorably impressed with the proposition of exchanging his ranch therefor, and returned to his home without doing anything definite one way or the other with regard to the proposed exchange.

Thereafter Stanley addressed a letter to Adams, complaining that the latter was not treating him fairly, and inclosing a written agreement, embracing the terms upon which Stanley was willing to negotiate the sale or exchange of the ranch, and to which he requested Adams to affix his signature. In this letter Stanley said, in part: "I have others who want to buy, not exchange, but I must now have an agreement that will authorize me to sell and deliver the property, or I don't want it, for I can't afford to take buyers out to see property to fool them. . . . If you want to sell (not trade) and will give me an agreement to convey if I secure a buyer let me know. . . . " Adams refused to sign said agreement. It may here be well to notice one of the points made by appellant in connection with the foregoing letter. It is claimed that the demand therein for a written agreement, with a statement by Stanley that, unless such an agreement was executed, he did not want to handle or have anything to do with the matter of selling or exchanging Adams' ranch, amounted to an abandonment by Stanley of any and all arrangements previously made with regard to the sale or exchange of said ranch. But, even if the letter referred to could well be so construed, still, the reply to said letter by Adams shows that there was an employment of Stanley by Adams as agent to sell or otherwise dispose of the latter's ranch—that is, either to sell it for cash or exchange it for property. Adams' said letter was as follows: "Your letter of the 20th inst. I got just as I got off the train at Cottonwood. You wrote it as if I went straight home. I did no such thing. I went down to Santa Cruz, and I met Mr. Draper as I was waiting for the night train at San Francisco. . . . I might trade with him yet (but it is not over likely). . . . Now you find me a buyer at $10 per acre and I will accept and you can get me a trade if you can suit me, and I will go down again, but I do not want you to come up, because I consider you would spoil any trade I could get. You are a very good hand to begin a sale or trade, but you are not in it to conclude one."

Subsequently to the receipt of the foregoing by Stanley, the latter, accompanied by Draper, went to the ranch of Adams, and thereupon the exchange of the properties of Adams and Draper was consummated on these terms: Draper to receive the sixteen hundred acre tract of land of Adams; to assume the payment of a note for $2,000 in favor of the Bank of Tehama County, which said note was secured by a mortgage on said tract of land; to execute to Adams two promissory notes—one for $4,000 and the other for $700—to be secured by mortgages on said land subordinate to the bank's mortgage, and to pay Adams the sum of $300 in cash, and to transfer to Adams "six lots with the four houses thereon at the corner of Sixth and Gilman streets, Berkeley, Alameda county, California, and one house and lot on Haskell street, about two hundred and fifty feet east of San Pablo avenue."

That Adams' letters to Stanley clearly disclose his employment of Stanley as an agent to sell the former's ranch there cannot be the slightest doubt, and this is all that is required by subdivision 6 of section 1624 of the Civil Code. (*Toomy* v. *Dunphy,* 86 Cal. 639, [25 Pac. 130]; *Kennedy* v. *Merickel,* 8 Cal. App. 378, [97 Pac. 81]; *Sanchez* v. *Yorba,* 8 Cal. App. 490, [97 Pac. 205].) Adams' letter, last referred to herein, authorized Stanley to secure a sale or an exchange of his ranch, his only qualification being that Stanley himself should not accompany the proposed purchaser on the visit to the ranch, for reasons suggested in said letter. And whether Stanley had or had not accompanied Draper to the ranch would be immaterial, in so far as Adams' obligation to pay Stanley the commissions to which he was justly entitled under his contract with Adams might be affected thereby.

It is also clear that Adams' agreement was that Stanley should be paid five per cent commission if the sale was entirely for cash and half that amount if the bargain was effected entirely on an exchange basis. The court computed the commissions to which it found the plaintiff to be entitled upon the basis that a part of the consideration moving from Draper to Adams was in cash and a part in property. Therefore, figuring that the assumption of the mortgage debt of $2,000 subsisting against the land and the notes executed to Adams aggregating $4,700 counted for cash, the court allowed commissions thereon as well as on the $300 cash payment at

the rate of five per cent, in accordance with the terms of
Adams' offer to Stanley in the event that he made a cash sale.
The commissions thus computed totaled the sum of $350. The
court then, obviously, figured that the total value of the
Berkeley property was $10,000, upon which two and one-half
per cent commissions were allowed, amounting in the aggre-
gate to $250, which sum, added to the amount allowed on
the cash part of the transaction, totaled the sum which the
court found was due plaintiff. This finding is justified by
the pleadings and the evidence.

It is clear from the evidence, as suggested, that Stanley
had performed the services which he had agreed with Adams
to render in the transaction by bringing the latter and Draper
together in negotiations which led to the making of the bar-
gain, upon what basis is immaterial, so far as Stanley's right
to compensation is concerned. It appears from the evidence
that when Stanley and Draper met Adams at the latter's
home on the day on which the trade was made, and prior to
any discussion of the matter, Stanley said that he would leave
Draper and Adams to conduct the negotiations themselves and
to make any bargain that might be the most agreeable to
them. Adams, by conduct at least, acquiesced in the course
thus suggested by Stanley and he and Draper made their bar-
gain in the absence of Stanley.

As to the complaint, the first paragraph thereof sets out
defendant's agreement to pay the sum of $600 for the services
rendered by Stanley in the form of a common count. The
second paragraph declared upon a special contract to pay
said amount. It is obvious that plaintiff relied upon his *in-
debitatus assumpsit* for a recovery. Indeed, he could not
have relied upon the special contract, for said contract called
for compensation either in the sum of $800 or the sum of
$400, according to the nature of the bargain, whether on a
cash basis or an exchange of properties.

Under the common count the proof sustains the finding and
judgment of the court as to the amount. And under the cir-
cumstances it was proper—indeed, necessary—to plead the
indebtedness in the form of a common count.

It is a settled rule in this state that where the terms of a
special contract have been varied or modified by the agreement
of the parties, the action for the amount due for work and

labor should be in the form of *indebitatus assumpsit,* and not upon the contract. ''In such case the contract may be introduced in evidence by either party as an admission of the standard of value, or as proof of any other fact necessary to the recovery, and should be allowed to go to the jury whenever it can aid them in attaining a sound conclusion.'' (*Reynolds* v. *Jourdan,* 6 Cal. 112; *Castagnino* v. *Balletta,* 82 Cal. 250, [23 Pac. 127] ; *Adams* v. *Burbank,* 103 Cal. 646, [37 Pac. 640] ; *Boyd* v. *Bargagliotti,* 12 Cal. App. 237, [107 Pac. 150].)

In the case at bar, the terms of the agreement between Stanley and Adams were necessarily changed by the terms upon which the latter and Draper agreed to exchange properties, and this change was by the act of Adams himself, with the tacit acquiescence of Stanley, who, we have seen, left the negotiations directly leading to the consummation of the bargain to the former and Draper.

But counsel for appellant declares that, if plaintiff relies upon the count in *indebitatus assumpsit,* he has failed to make out a case, since there was no proof made that the services of plaintiff's assignor were reasonably worth the sum for which judgment has been awarded. The special contract itself was evidence upon this point, and it was for the trial court to say whether from that and other evidence received the services rendered were reasonably worth $600, and the finding of the trial court that that sum represented the reasonable value of the services performed is conclusive. It was not necessary, as counsel for appellant seems to think, that witnesses should have been produced to say that a certain sum would represent the reasonable value of the services. As stated, the contract itself was competent evidence of the standard of value, and upon that evidence alone the court was authorized to fix the sum that it deemed, under all the circumstances, would amount to reasonable compensation.

The judgment and order are affirmed.

Chipman, P. J., and Burnett, J., concurred.