[Civ. No. 12843.   Second Dist., Div. One.—April 24, 1941.]

LARRY SIMON, Appellant, v. J. MATTSON, as Director of Motor Vehicles, etc., et al., Respondents.

J. G. Moser for Appellant.

Earl Warren, Attorney-General, and R. S. McLaughlin, Deputy Attorney-General, for Respondents.

DESMOND, J., *pro tem.*—The Superior Court of the County of Los Angeles, acting upon the petition of appellant, refused to grant a writ of mandate commanding the respondents, officers of the Department of Motor Vehicles of the State of California, to issue certificates of junk for four motor vehicles which appellant had acquired; hence this appeal.

Section 235 of the Vehicle Code, as amended in 1939, reads as follows: "Any person *desiring* to dismantle or wreck any vehicle registered hereunder shall immediately forward to the department the certificate of ownership, registration card and the *unexpired* license plates issued for such vehicle. The department shall issue to such person a certificate of junk . . . " Previously no provision was made for issuance of a junk certificate, section 235 merely reading: "Any person dismantling or wrecking any vehicle registered hereunder shall immediately forward to the department the certificate of ownership, registration card and the license plate or plates *last* issued for such vehicle. . . . "

A careful reading of the two sections and consideration of the words which we have italicized will indicate that prior to 1939 any person was at liberty, without receiving permission from the Motor Vehicle Department, to dismantle or wreck a car, merely being under the obligation to forward to the Department the certificate of ownership, registration card and the license plate or plates last issued for such vehicle. The amended section in effect prohibits the junking of a vehicle without permission of the department issued in the form of a certificate of junk, and as will be noted, requires

a surrender, not of the last license plates but of the unexpired license plates.

From the record, it appears that on April 19, 1940, certificates of junk were requested by appellant and refused by respondents on four automobiles: a Durant, a Studebaker, a Buick and a Ford. Of these, only one, the Durant car, carried unexpired 1940 license plates.

As to that automobile the records of the Motor Vehicle Department showed that its legal and registered owner was not the appellant, but one W. C. Felton, and although appellant offered with his application a certificate of ownership (presumably showing Felton as the owner), a 1940 certificate of registration and 1940 license plates, respondents refused to issue the certificate of junk in the name of petitioner, because (to quote from the findings) ''the registration and legal ownership of said vehicle had not been transferred to petitioner and because the fee required by statute for such transfer was not paid or tendered.'' The Vehicle Code (sec. 377) calls for payment of the sum of one dollar for such transfer.

As to the Studebaker, appellant presented an affidavit of nonoperation during the period subsequent to December 31, 1939, presumably offered in lieu of unexpired 1940 license plates (Vehicle Code, sec. 164.5), a certificate of ownership and an application for a duplicate certificate of registration. The records showed one Adair Wingett as the registered owner of this automobile. The department refused to issue a duplicate certificate of registration to the petitioner because the statutory fee was not paid or tendered, and refused to issue a certificate of junk in the name of the petitioner, because the registration and legal ownership of said vehicle had not been transferred to petitioner, and because the fee required by statute for such transfer was not paid or tendered.

As to the Buick, appellant presented a certificate of ownership and an application for duplicate certificate of registration. The records did not show that petitioner was the owner of this car, one Vidal appearing as the registered owner, and Bank of America as legal owner. The certificate of ownership was endorsed by the bank, and presented with it was an affidavit of repossession made by that bank. The sum of one dollar and fifty cents was tendered to the officers of

the department, purportedly to represent the one dollar fee for transfer of ownership to the name of petitioner, and the fifty cents fee for issuance of a duplicate registration certificate. The respondents refused to issue a certificate of junk in the name of petitioner, because the registration and legal ownership of the car had not been transferred to him, and because the fee required by statute for transfer of registration to the name of the legal owner upon repossession of the car had not been paid or tendered. The refusal to issue a certificate of junk in the name of the petitioner was also grounded upon the further reason that the 1940 registration fees and penalties, and the 1940 license fee and penalties, upon the Buick, had not been paid.

As to the Ford, the records of the department showed that one Castro was the registered owner of the car; that Southern Finance Service was the legal owner; and although petitioner delivered to the department a certificate of ownership and application for duplicate certificate of registration, and in connection with his application tendered the sum of one dollar as a fee for the transfer of registration and legal ownership to the name of the petitioner, and the sum of fifty cents for the issuance of a duplicate registration certificate, the respondents refused to issue a certificate of junk in the name of the petitioner because the 1940 registration fees and penalties, and the 1940 license fee and penalties, upon the car, had not been paid.

Analyzing the various situations presented by the foregoing review, it appears that a prime requisite for securing a certificate of junk is the presentation by the applicant of a certificate of ownership in himself. The Department of Motor Vehicles will not accept, as sufficient compliance with the statute, a certificate of ownership issued to one having a prior interest in the car whether that one be a former registered owner or a former legal owner, or whether or not repossession has taken place. Appellant feels that since he is a dealer he should not be required to go through the process of securing by transfer or transfers a certificate of ownership in himself, his object being to wreck the car in question and not to use it on the highway, and points out that, prior to the enactment of the 1939 amendment of section 235, all that a dealer or anyone else was required to do, having wrecked a car, was to forward to the Department of Motor Vehicles

the certificate of ownership, registration card, and the license plate or plates last issued for such vehicle. This view ignores the effect of the amendment. Any person now desiring to dismantle or wreck a vehicle must immediately forward to the department the certificate of ownership, registration card and the unexpired license plate or plates issued for the car. That being done, the Department will issue a certificate of junk, but insists that the certificate of ownership and certificate of registration shall show that the recipient has a legal right to wreck the car, being the actual owner thereof. This interpretation of the language of the amended section seems logical since surrender of unexpired license plates is required as a condition for the issuance of a junk certificate. Such plates would have been issued at the beginning of the year in which the application is made, under section 160, Vehicle Code, only to the owner, subject of course to transfer through the department to a new owner during the year while unexpired.

It may be noted here that, so far as pertinent, section 186 of the Vehicle Code reads as follows:

"No transfer of the title or any interest in or to a vehicle registered hereunder shall pass nor shall the delivery of any said vehicle be deemed to have been made and any attempted transfer shall not be effective for any purpose until transfer of registration is made and the department has issued a new certificate of ownership and registration card with respect thereto as provided herein. . . . "

Respondents in their brief state that they will issue a certificate of junk free of charge to any person showing full title in himself to the vehicle involved and presenting the items specified in section 235, Vehicle Code. To show full title in himself, this appellant necessarily will be put to the expense of recording certain transfers or meeting other charges specified by the Vehicle Code all of which we have set out in reference to each of the applications. All these charges, it appears, constitute liens against the particular vehicle to which respectively they attach. Section 379, Vehicle Code, reads as follows:

"(a) Every registration or transfer fee and any penalty added thereto, from the date the same become due, constitute a lien upon the vehicle for which due.

"(b) The department shall collect such fee and any penalty by seizure of such vehicle from the person or persons in possession thereof, if any, and by the sale of such vehicle. . . . "

Section 6 of the Vehicle License Fee Act (Stats. 1935, p. 1312 [Deering's, 1935, Supp., Act 5149]), has a similar provision: "Every license fee and any penalty added thereto, from the date the same becomes due, constitutes a lien upon the vehicle for which due." Seizure and sale are provided also for the enforcement of this lien.

Because the process of showing full title in himself will incidentally clear all these charges and lift the lien from each vehicle, appellant complains "that the department is attempting by its procedure, contrary to the law in such cases made and provided, to enforce the collection of a tax levied against the personal property of an owner from the purchaser of such property in a manner other than by the enforcement of its lien against such property."

The respondents, however, deny that any coercion is being used. Their position, as stated by Mr. McLaughlin, Deputy Attorney-General, at the hearing before the trial judge, we approve and quote at this point: "Upon the issuance of the certificate of junk, as referred to, the car is immediately torn down, the parts strewn from here to Halifax, possibly; the lien is effectually destroyed. Therefore before issuing the certificate of junk it is the duty of the Department to see that that tax is paid, either by seizure of the truck or by voluntary payment by the person who owned the property at the time that the lien attached, or by some other person who is legally interested in that car. They object to our attempting to force them to pay this tax; we are not trying to force them to pay this tax; merely saying that this car shall not be destroyed by being junked, until the lien is satisfied. You have a right to come in and redeem the car by paying the tax. If you do not want to, that is all right; we may eventually resort to the authority given by the statute, to seize and sell the car in satisfaction of the tax, but here we are not bringing any action in any way, shape or form to collect this tax."

In other words, instead of enforcing payment of the charges due on account of these automobiles, the department at the present time merely declines to waive its right to rely

upon the lien created by law in favor of the state. Such a course does not impress us as constituting compulsion.

We have not overlooked the various other points urged by appellant as grounds for reversal, but find none of them tenable. We believe the trial court properly refused to issue the writ of mandate.

Judgment affirmed.

Doran, Acting P. J., and White, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 19, 1941.