[Civ. No. 13351.   First Dist., Div. One.   May 27, 1947.]

ETHEL PAUL, Respondent, v. KEY SYSTEM (a Corporation) et al., Appellants.

Donahue, Richards & Hamlin, Tinning & DeLap, J. Vance Porlier and John Paul Jones for Appellants.

Nichols & Richards, George L. Vaughns and Thomas Hart Kennedy for Respondent.

WARD, J.—Defendants Key System, a corporation, and Chester L. Flansburg appeal from a judgment awarding plaintiff damages for personal injuries. The jury returned a verdict for $12,000. Defendants' motion for a new trial was denied on condition plaintiff waive all over $9,500, which condition was complied with by plaintiff. The jury found for defendant Grover G. Tiger who takes no part in this appeal.

The points raised on appeal are (1) sufficiency of the evidence, (2) excessiveness of the verdict, (3) prejudicial misconduct on the part of plaintiff's counsel, and (4) reversible error in the conduct of the cross-examination of defendant Flansburg.

The suit concerns a collision of a Key System bus, operated by Flansburg, on which plaintiff was a passenger, and a Ford V-8 sedan, driven by Tiger, in Berkeley, California. Plaintiff testified that on November 27, 1945, at about 6:15 p. m., she and her fourteen-year-old son were waiting at the coach stop on Sacramento Street near its intersection with Ashby Avenue, an arterial marked with stop signs; that the bus driven by Flansburg in a southerly direction on Sacramento Street, stopped beyond the coach stop near the traffic stop; that she was the last of five passengers to board the bus, and that after boarding the bus she asked for two tickets to San Francisco and tendered a dollar bill. Her testimony was confirmed by two other passengers on the bus, namely, her son and a Mrs. Chase. Flansburg testified, ". . . as soon as she got on she handed me the dollar bill and asked for two tickets. I took the dollar bill and made the 60c change." He was then asked: "You were proceeding at that time?" and answered: "I was proceeding to move up to the stop sign." Meanwhile, Tiger was driving a car's length behind a car operated by one Rippy in an easterly direction on Ashby Avenue. The police officer who investigated the collision testified that as a result of the impact of the bus and Tiger's

car, the left rear fender of Tiger's car was knocked "in against the left rear wheel," whereas the bus was dented on the right front corner. Mrs. Chase answered affirmatively the question: "Did the automobile `[Tiger's] almost get by?" Evidence that only the left rear fender of Tiger's car was damaged, supports her conclusion.

The trial court's instructions are not challenged on this appeal. Vehicle Code, section 552, which was read to the jury, provides: "The driver of any vehicle which has stopped as required by this code at the entrance to a through highway shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard." "It is presumed that juries are composed of intelligent men, and, as such, are capable of understanding the charge of the court and applying it to the evidence." (24 Cal.Jur. 795.) It follows that the jury found that Tiger was approaching so closely on Ashby Avenue as to constitute an immediate hazard to Flansburg. On appeal, the jury's finding may be reversed only if there is insufficient evidence to support it. (*Callaghy* v. *Mosle,* 66 Cal. App.2d 788 [153 P.2d 91]; *Weddle* v. *Loges,* 52 Cal.App.2d 115 [125 P.2d 914]; *Duarte* v. *Postal Union Life Ins. Co.,* 75 Cal.App.2d 557 [171 P.2d 574]; *Freeman* v. *Nickerson,* 77 Cal.App.2d 40 [174 P.2d 688].)

Defendants urge that if Tiger's car was in the position plaintiff's witness placed it, traveling at the speed they say, the accident would not have occurred, because Tiger would have cleared the intersection before the bus arrived at the point of impact. They cite *Hughes* v. *Quackenbush,* 1 Cal. App.2d 349 [37 P.2d 99], wherein it is said, page 354: "Of course, testimony which is inherently improbable may be disregarded. (*Neilson* v. *Houle,* 200 Cal. 726 [254 P. 891].) But to warrant such action there must exist either a physical impossibility of the evidence being true or its falsity must be apparent, without any resort to inferences or deductions. (*Powell* v. *Powell,* 40 Cal.App. 155 [180 P. 346]; *Stahmer* v. *Stahmer,* 125 Cal.App. 132 [13 P.2d 833].)" Defendants overlook the fact that the testimony to which they refer is not the only evidence from which the jury might determine that Tiger was approaching so closely on Ashby Avenue as to constitute an immediate hazard to Flansburg.

To support their argument that no evidence supports a finding that Tiger's car constituted an immediate hazard to

Flansburg, defendants argue that the record shows that Tiger anticipated that the car ahead of him might yield the right of way to the bus. They quote the following portion of Tiger's testimony: "Q. Did you keep watching the bus or not? A. No, when I seen the bus stopped, and the other car was heading—I turned my head to watch the other car, in case he stopped." Immediately after making this statement, Tiger answered the question, "Were there any cars here that you noticed?" with the reply, "I notice when I turned from seeing the bus, that the other was stopped at the stopsign. . . . It was at the stopsign here, on, I guess you would call it Sacramento," indicating that the typed record is not clear as to whether he was referring to Rippy's car or to that of one Ritter who was headed north on Sacramento Street at the time of the accident.

Ritter's testimony supports the finding of the jury that Tiger's car constituted an immediate hazard to any vehicle attempting to cross Ashby Avenue shortly before the collision. After testifying that when he first saw the coach it was stopped on the opposite side of the street from him, he was asked to locate Tiger's car: "A. Coming up Ashby. Q. Do you know how far back it was from the intersection? A. No, I don't but I had stopped to let it go by. That is why I was stopped there. I was waiting for the two cars to go by."

None of the authorities cited by defendants require a holding that there is insufficient evidence to sustain the judgment. *Casselman* v. *Hartford A. & I. Co.*, 36 Cal.App.2d 700, 708 [98 P.2d 539], supports the statement that it is not the law "that every motorist who attempts to enter a main highway from a side road, does so at his peril." There, an entry onto a highway was attempted from a side road having no stop sign. The court expressly found that no "through highway" was involved, since Vehicle Code, section 82.5 provides: "A 'through highway' is a highway or portion thereof at the entrance to which vehicular traffic from intersecting highways is required by law to stop before entering or crossing the same, and when stop signs are erected as provided in this code." Unlike the present case, Vehicle Code, section 552, was not involved.

The Casselman case is also cited to support defendants' claim that the bus had the right of way and Flansburg had the right to assume that Tiger would yield to him. (See, also, *Page* v. *Mazzei*, 213 Cal. 644, 645 [3 P.2d 11].) Although section 522 was not involved, the principle expressed in that

section is enunciated at page 707 of the Casselman opinion in a quotation from *Pattisson* v. *Cavanagh*, 18 Cal.App.2d 123, 127 [63 P.2d 868, 64 P.2d 945], where it is said: ". . . the law is also well settled that if it would appear to the mind of any reasonable person that the vehicle approaching the intersection on the arterial highway is near enough to constitute an immediate danger, and under those conditions the driver of the other vehicle attempts to enter or cross the arterial, he is negligent in so doing even though he was the first to arrive at or enter the intersection." The court concludes that whether the approaching vehicle constitutes an immediate danger "was a matter for the determination of the jury." In the present case, the jury's implied finding that Tiger's car was approaching so closely on Ashby Avenue as to constitute an immediate hazard to Flansburg must stand.

At the time of the previously described collision, plaintiff was standing by the fare box. Before she had time to sit down, the impact knocked her to the floor of the bus. Plaintiff was removed by stretcher to a hospital and subsequently to her home under the care of a practical nurse. The doctor who attended her testified that he first saw plaintiff on the night of the accident when she was brought to the hospital suffering considerable pain in her neck, back and the extremities on the left side of her body. She had a fractured left ankle which was in a cast for three to four weeks. He paid daily calls to her home—where she was confined to her bed for approximately five weeks—often coming twice a day. When she was able to leave her home she came to his office two or three times a week for short wave diathermy. Under his treatment a sprain in the neck—an actual rupture of the small bands of muscle—and sprains in the lower back and cervical area, disappeared. He further testified that she continues to have difficulty in the seventh or eighth dorsal vertebra or thoracic vertebra, between the tips of the shoulder blades, and that muscle spasm is present in that area. This difficulty was diagnosed as hernia of the intervertebral disc between the seventh and eighth dorsal vertebrae. Plaintiff testified that she is a widow and that prior to the accident she earned $30 to $35 a week by engaging in housework.

Defendants support their contention that the verdict of $9,500 is excessive by pointing out that the testimony of the doctor they called to examine plaintiff differed from the testimony of plaintiff's doctor. Defendants' doctor examined

plaintiff for about an hour and concluded that she had no herniated disc. He testified as to an involved series of tests to be given to determine the presence of a herniated disc, but he made no pretense of having subjected plaintiff to such tests. Plaintiff contends that the jury was entitled to discredit defendants' doctor since he testified that he did not recall any cases of herniated disc in the dorsal spine, but on cross-examination it was brought out that he had heard of such a case.

Defendants argue that plaintiff's doctor should have operated to relieve plaintiff's difficulty, thus minimizing the damages. The duty of an injured party to undergo an operation prior to trial depends upon the peculiar circumstances of the case. (*Mecchi* v. *Lyon Van & Storage Co.*, 38 Cal.App.2d 674 [102 P.2d 422].) *Withrow* v. *Becker*, 6 Cal.App.2d 723 [45 P.2d 235], cited by defendants, is not inconsistent with an affirmance of the award of $9,500. There the judgment was reversed and the cause remanded for a new trial because an instruction that the jury must take into consideration all the circumstances in fixing damages was too broad (p. 729) "especially in view of the testimony in the record to the effect that the appellant was covered by insurance" and because an operation for an apparently simple hernia (p. 730) "would have greatly reduced such damage as appears from the plaintiff's inability to work."

A recent case in point, though not involving the identical injuries that appear in the present case, is *Roedder* v. *Lindsley*, 28 Cal.2d 820 [172 P.2d 353], wherein the Supreme Court affirmed an award of $9,756.56 to a plaintiff who suffered from spasms of the back muscles as a result of a collision, and two months thereafter resumed work against doctor's advice. At page 823, the court said: ". . . a verdict will not be disturbed by an appellate court unless it is so grossly disproportionate to any reasonable limit of compensation as shown by the evidence that it shocks one's sense of justice and raises a presumption that it is based on passion and prejudice rather than sober judgment."

Defendants urge that plaintiff's counsel was guilty of prejudicial misconduct when, during the trial, he stated that he had not been able to locate a witness, named Rippy, who drove the car just ahead of Tiger's car, but that he had a statement of Rippy. Defendants' counsel called attention to the fact that the statement was hearsay. Assuming that plaintiff's counsel knew such evidence was inadmissible, and

that his action in this respect was reprehensible, if not preju-dicial, defendants waived such misconduct by their failure to request the court to make an appropriate order or to ad-monish the jury to disregard the reference to inadmissible injected evidence. (*Jones* v. *Bridges,* 38 Cal.App.2d 341 [101 P.2d 91] ; *Freeman* v. *Nickerson, supra.*)

That defendants were not prejudiced by the incident ap-pears from the fact that the jury was instructed as follows: "You are not to consider as evidence . . . anything offered to be proven . . . to which an objection was sustained by the Court. All such matters and any inferences you may have drawn therefrom should be entirely eliminated from your consideration and should be treated as though never seen or heard by you." Furthermore, as said in *Formosa* v. *Yellow Cab Co.,* 31 Cal.App.2d 77, 83 [87 P.2d 716], triers of facts "are presumed to be influenced only by the pertinent evidence or testimony introduced during the trial."

During the direct examination of Flansburg under Code of Civil Procedure, section 2055, the following occurred: "Q. How near to you was this automobile that you ran into when you first saw it? A. I would say 150 to 200 feet. . . . Q. Do you remember when in your deposition you said it was 150 to 100 feet? A. I did not. I said 150 to 200 feet. Mr. Porlier [Counsel for Defendants] : If the Court please —show him the deposition and let's do it properly, Mr. Nich-ols. Mr. Nichols [Counsel for Plaintiff] : Look at page 9 in your deposition. . . . A. 200 feet. It was corrected imme-diately afterwards. Q. What do you mean 'immediately after-wards'? . . . Mr. Porlier: I submit it is incompetent, ir-relevant and immaterial. Mr. Nichols: If the Court please, he said he made it right afterwards and I am prepared to show that he didn't make it right afterwards at all. The Court: Objection overruled. Q. When did you make the correction? A. The correction was made to-day."

Defendants' argument that as a deponent has the right to correct his deposition (Code Civ. Proc., §§ 2006, 2032, and see *Lewis* v. *Western Truck Line,* 44 Cal.App.2d 455 [112 P.2d 747] ), the corrected statement in the deposition was not impeaching, is not contested by plaintiff. Plaintiff points out that the impeachment was directed to Flansburg's statement as to the time when the change was made. Defendants con-tend that the time when the correction was made was a col-lateral matter and hence the objection to questioning as to

when the change was made should have been sustained, citing *Estate of Gird,* 157 Cal. 534 [108 P. 499, 137 Am.St.Rep. 131], which held that it was not error to exclude impeachment on collateral matters. The trial court committed no reversible error in overruling defendants' objection. As said in *Duarte* v. *Postal Union Life Ins. Co., supra,* page 676: "The extent of the cross-examination of a witness is a matter largely within the sound discretion of the trial judge." ■ Defendants quote the trial court's instruction that "if any witness examined before you has, in your opinion, wilfully sworn falsely as to any *material matter,* you may, in your discretion, distrust his or her entire testimony" (emphasis added) to support their argument that prejudice resulted from the conduct of the trial court in permitting Flansburg to be examined on the matter of the time when the correction was made. Assuming defendants to be correct in their assertion that the time when the correction was made was a collateral matter, it is difficult to see that they were prejudiced by an instruction that a witness's testimony may be distrusted if containing a contradiction as to any material matter.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.