[Civ. No. 69363. Second Dist., Div. One. Apr. 30, 1984.]

JANE PAULINE GEORGE, as Administratrix, etc.,
Plaintiff and Respondent, v.
DOUBLE-D FOODS, INC., Defendant and Appellant.

---

## COUNSEL

J. Robert Maddox for Defendant and Appellant.

Van Petten & Holen and H. O. Van Petten for Plaintiff and Respondent.

---

## OPINION

## SPENCER, P. J.—

### INTRODUCTION

Defendant Double-D Foods, Inc. appeals from a judgment entered in favor of plaintiff Jane Pauline George, as administratrix of the estate of Clarence Patrick George, deceased, after a jury trial. The matter was tried on a theory of quantum meruit, to recover the unpaid balance due on the reasonable value of decedent's services as an executive employee of defendant for a period of 28 months. The jury found the uncompensated reasonable value of decedent's services to be $96,000 and further found that plaintiff was entitled to interest on that sum from the date suit was commenced. By stipulation, the sum of $5,800 was subtracted from the judgment in settlement of defendant's cross-complaint. Defendant's motion for a new trial was denied.

### STATEMENT OF FACTS

The defendant was engaged in a specialized branch of the food trade known as vegetable oil processing. The decedent served as defendant's vice

president in charge of sales from October 1, 1972, to December 15, 1974, as well as from March 1 to May 17, 1975.

For 25 years prior to his employment by defendant, decedent had been engaged in the vegetable oil processing trade, both as an employee and an owner-entrepreneur. Immediately prior to his employment by defendant, decedent served as the institutional products sales manager for Wilsey Food Products, a large oil processor.

The year before decedent entered defendant's employ, defendant constructed a new plant with a production capacity well beyond its sales volume; as a consequence, defendant was operating at a loss in 1972. Decedent was socially acquainted with the principal executives of defendant and, for some products, defendant was a customer of Wilsey Food Products while decedent served as Wilsey's sales manager. Several months of negotiations with defendant's executives preceded decedent's employment.

According to the decedent, he and defendant's agents had orally agreed he would be compensated by payment of a salary, as well as regular bonuses of 10 percent of defendant's yearly profits in excess of $200,000 and an option to purchase 10 percent of defendant's stock at its book value at the time of decedent's employment. A written contract of employment was prepared and signed by defendant, but never was presented to or signed by decedent. Defendant denied the oral promises of bonuses and a stock purchase option, asserting instead that decedent had been fully compensated for the reasonable value of his services by the payment of salary and discretionary bonuses.

Decedent originally left defendant's employ due to defendant's failure to provide a written contract, but later returned upon receiving a promise to negotiate a new and similar written agreement. Decedent once again resigned, when defendant terminated contract negotiations upon announcing the company was being sold to Miami Margarine. The instant suit followed.

### CONTENTS

### I

Defendant contends the trial court erred prejudicially in permitting the introduction in evidence of the following oral promises, as admissions of the reasonable value of decedent's services:

A. The promise to sell decedent 10 percent of defendant's stock at its book value at the time decedent commenced employment; and

B. The promise to pay decedent regular bonuses equal to 10 percent of defendant's annual profits in excess of $200,000.

## II

Defendant further contends the trial court erred in instructing the jury that the terms of an oral or written agreement constituted an admission, an out-of-court declaration by a party to the action; and further, that understandings and agreements between the party performing services and the party receiving services could be considered as evidence of the reasonable value of the performing party's services.

## III

Defendant asserts the trial court committed the further prejudicial evidentiary error of permitting plaintiff's counsel to read into evidence changes and additions which the decedent made in his deposition, inasmuch as defendant had no opportunity to cross-examine decedent with respect to the changes.

## IV

Defendant further asserts the trial court erred in instructing the jury that prejudgment interest could be awarded in the instant action, for the following reasons:

A. Prejudgment interest is not available in a quantum meruit action, in that the damages are unliquidated;

B. Prejudgment interest is not available under the authority of Civil Code section 3287, subdivision (b), for unliquidated damages, in that a proceeding in quantum meruit is not an action in contract;

C. The trial court erroneously and arbitrarily fixed as the date from which interest could be awarded the date suit was commenced; and

D. The trial court erred in confiding the awarding of prejudgment interest to the discretion of the jury, in that Civil Code section 3287, subdivision (b) expressly places the matter within the discretion of the court.

### DISCUSSION

### I

Defendant contends the trial court erred prejudicially in permitting the introduction in evidence of certain oral promises, as admissions of the rea-

sonable value of decedent's services. For the reasons set forth below, we agree in part.

## PROMISE TO SELL DECEDENT STOCK

■■■ Defendant first challenges as erroneous the introduction in evidence of defendant's promise to sell decedent 10 percent of defendant's stock at its book value at the time decedent commenced employment. ■■■ It is settled that an agreed price set forth in an unenforceable or invalid contract nevertheless is relevant as some evidence, or a criterion, of the reasonable value of the services rendered. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 886 [92 Cal.Rptr. 162, 479 P.2d 362]; *Burgermeister* v. *Wells Fargo Bank etc. Co.* (1961) 191 Cal.App.2d 624, 631 [13 Cal.Rptr. 123]; *Parker* v. *Maier Brewing Co.* (1960) 180 Cal.App.2d 630, 635 [4 Cal.Rptr. 825].) In other words, the "oral stipulations of the parties as to compensation to be paid for services rendered . . . are in the nature of admissions by them as to the reasonable value of such services . . . ." (*Offeman* v. *Robertson-Cole Studios* (1926) 80 Cal.App. 1, 13 [251 P. 830].)

To qualify as an "agreed price," a promise which does not state a sum of money must assign a dollar value to property with which the performing party is to be compensated or provide a formula by which an ultimate, agreed-upon sum of money is readily ascertainable. (See, e.g., *Hanley* v. *Murphy* (1924) 70 Cal.App. 157, 165 [232 P. 767]; cf. *Ferrier* v. *Commercial Steel Corp.* (1956) 142 Cal.App.2d 424, 427 [298 P.2d 555]; *Offeman* v. *Robertson-Cole Studios, supra,* 80 Cal.App. 1, 13.) There is a clear rationale for the limitation on viewing a promise to compensate in property as an "agreed price": if no dollar value is assigned to property intended as compensation, the property's value can be determined only by resort to extrinsic evidence proving value; since the fair market value of property is a matter of opinion upon which reasonable minds can differ, the parties have not, by virtue of the promise, agreed upon a price which admits the reasonable value of the services.

■■■ The promise to permit decedent to purchase 10 percent of defendant's stock at its book value on a certain date fails, in two fundamental respects, to qualify as an "agreed price." First, the promise is not to *pay* the decedent in shares of stock, but to permit him an opportunity to *purchase* shares as an added inducement to accept employment. Hence, the promise lacks the common characteristics of "compensation."

Second, and more importantly, were the promise to be viewed as conferring a right to a form of compensation, it sheds no light whatsoever on the

value of the decedent's services to defendant. The promise provides indicia of the value attached to the decedent's services only upon the introduction of extrinsic evidence placing a monetary value on the shares in excess of the assigned book value (decedent's purchase price). Even then, the promise would bespeak an "agreed price" only if the parties shared a common perception of the dollar value of the shares.

Inasmuch as the parties well may have differed in their opinion of the value to be assigned to the stock purchase option, the promise is not evidence of an agreed price—ergo, an admission of the reasonable value of the decedent's services to defendant. Therefore, the trial court erred in admitting evidence of the stock option promise.

■ Although the jury clearly did not accept entirely plaintiff's counsel's argument as to how the evidence of the stock purchase option promise demonstrated the reasonable value of decedent's services, the size of the verdict indicates a reasonable probability the jury would have reached a different result had this evidence been excluded. Therefore, given the considerable emphasis plaintiff's counsel gave to this evidence, the error must be deemed prejudicial. (See *Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725, 746 [144 Cal.Rptr. 380, 575 P.2d 1162].)

PROMISE TO PAY A BONUS ON ANNUAL PROFITS

■ Defendant also challenges as erroneous the introduction in evidence of the promise to pay decedent a yearly bonus equal to 10 percent of defendant's annual profits in excess of $200,000. In contrast to the stock purchase option promise, the promise to pay a bonus is a promise to compensate decedent for his services. Defendant argues, nevertheless, that the promise contains no "agreed price." We disagree.

No dollar figure is used and no precise dollar value is assigned to property; however, the promise does contain a formula by which the dollar amount of the compensation is readily ascertainable. Decedent was to be paid each year a bonus equal to 10 percent of defendant's annual profits in excess of $200,000. It is a simple mathematical calculation to determine the profits in excess of $200,000 for any given year and, thence, a 10 percent share of those profits. Therefore, the promise is akin to that approved as an admission of the value of services in *Ferrier* v. *Commercial Steel Corp.*, *supra*, 142 Cal.App.2d 424. In *Ferrier*, the promise was to pay a certain percentage of the price recovered on a contract paying a certain sum per pound of items laundered. The percentage was stated and the price per pound to be paid under the primary contract was known; it remained only to receive evidence as to the number of pounds of items laundered under

the primary contract. In other words, the promise provided a complete formula by which the admitted value of the plaintiff's services could be determined—without resort to the subjective valuation of property. The instant promise to pay decedent a bonus is distinguishable from that approved in *Ferrier* in no material respect. (See also *Parker* v. *Maier Brewing Co.*, *supra*, 180 Cal.App.2d 630, 635.) Accordingly, we perceive no error in the introduction of this evidence.

## II

■■■ Defendant further contends the trial court erred in instructing the jury that the terms of an oral or written agreement constituted an admission, an out-of-court declaration by a party to the action; and further, that understandings and agreements between the party performing services and the party receiving services could be considered as evidence of the reasonable value of the performing party's services. The contention is predicated on defendant's theory that the introduction in evidence of the oral promises discussed, *ante,* was erroneous.

As we noted, the oral promise to pay decedent a bonus was properly admitted in evidence. As to that promise, the instructions are a correct statement of the law. (See *Offeman* v. *Robertson-Cole Studios, supra,* 80 Cal.App. 1, 18.) Accordingly, we perceive no error in applying the instructions to evidence of the oral promise to pay a bonus. However, insofar as the instructions were made equally applicable to the oral promise to permit decedent to purchase defendant's stock, the trial court compounded the prejudicial effect of the erroneous admission of that evidence.

## III

■■■ Defendant asserts the trial court committed the further prejudicial evidentiary error of permitting plaintiff's counsel to read into evidence changes and additions which the decedent made in his deposition, inasmuch as defendant had no opportunity to cross-examine decedent with respect to the changes. This assertion is devoid of merit.

In view of decedent's patent unavailability as a witness, the trial court was authorized to permit the use of the deposition for any purpose. (Code Civ. Proc., § 2016, subd. (d)(3)(i).) Generally, the admission of a deposition is a matter within the discretion of the trial court. (*Jordan* v. *Warnke* (1962) 205 Cal.App.2d 621, 630 [23 Cal.Rptr. 300].)

In arguing the trial court abused its discretion with respect to the passages the decedent corrected, *sans* the opportunity for cross-examination, defend-

ant relies on *Pollard* v. *Pollard* (1959) 166 Cal.App.2d 698, 705 [333 P.2d 356]. In *Pollard,* the trial court refused to admit in evidence a partially completed deposition of a decedent, in which there had been no cross-examination of the deponent and it was not clear direct examination had been completed. On appeal, the court found no abuse of discretion in exclusion, notwithstanding an out-of-state authority relied on by the appellant to the effect that a partly completed deposition is admissible when the cross-examination of the deponent has in no way been prevented.

*Pollard* has no bearing on the instant matter. Here, decedent's deposition was completed, including cross-examination, and signed. It is established that a deponent has a statutory right to make corrections (*Paul* v. *Key System* (1947) 80 Cal.App.2d 21, 27 [180 P.2d 940]; *White* v. *Waters* (1945) 68 Cal.App.2d 517, 519 [157 P.2d 434]) and it is proper for the trier of fact to consider the changes in the trial of the action, even where the deponent has died (*ibid.*). In view of the deponent's absolute right to make corrections, neither the fact he has done so nor the nature of the changes has impeachment value. (*Paul* v. *Key System, supra,* 80 Cal.App.2d 21, 27.)

Defendant's remedy was not the exclusion of the corrected portions of decedent's deposition, but to offer in evidence the answers as they read before the corrections were made—if the corrected passages were material to the issues of the case. (See *Gasquet* v. *Pechin* (1904) 143 Cal. 515, 521-522 [77 P. 481]; *Lewis* v. *Western Truck Line* (1941) 44 Cal.App.2d 445, 461 [112 P.2d 747].) That defendant failed to avail itself of this remedy does not render the admission of the corrected portions of decedent's deposition an abuse of discretion.

IV

Defendant further asserts the trial court erred in instructing the jury that prejudgment interest could be awarded in the instant action, for the following reasons:

A. Prejudgment interest is not available in a quantum meruit action, in that the damages are unliquidated;

B. Prejudgment interest is not available under the authority of Civil Code section 3287, subdivision (b), for unliquidated damages, in that a proceeding in quantum meruit is not an action in contract;

C. The trial court erroneously and arbitrarily fixed as the date from which interest could be awarded the date suit was commenced; and

D. The trial court erred in confiding the awarding of prejudgment interest to the discretion of the jury, in that Civil Code section 3287, subdivision (b) expressly places the matter within the discretion of the court. Once again, we agree in part.

### PREJUDGMENT INTEREST ON UNLIQUIDATED DAMAGES

Prior to the amendment of Civil Code section 3287 in 1967, to add subdivision (b) (Stats. 1967, ch. 1230, § 1), it was the general rule that prejudgment interest was not to be awarded on unliquidated claims; i.e., "where damages can be ascertained only by a judicial determination upon conflicting evidence as to the amount due, . . ." (*Nicholson-Brown, Inc.* v. *City of San Jose* (1976) 62 Cal.App.3d 526, 533 [133 Cal.Rptr. 159]; see also Civil Code, § 3287, subd. (a).) ■ As a rule, the amount of damages in an action on quantum meruit is held to be an unliquidated claim, in that the amount due must be determined from a presentation of evidence as to the extent, character and value of the plaintiff's services. (*Cox* v. *McLaughlin* (1888) 76 Cal. 60, 67-68 [18 P. 100]; *Samuels* v. *Singer* (1934) 1 Cal.App.2d 545, 549 [36 P.2d 1098].) Hence, prior to the passage of Civil Code section 3287, subdivision (b), an award of prejudgment interest clearly was precluded in a quantum meruit action.

Subdivision (b) of Civil Code section 3287 permits a discretionary award of prejudgment interest on unliquidated claims only when those claims arise "upon a cause of action in contract." Consequently, the former rule relating to the awarding of prejudgment interest on unliquidated claims holds true in any noncontractual setting and plaintiff's entitlement to prejudgment interest turns on whether an action in quantum meruit is an action in contract.

### QUANTUM MERUIT AS AN ACTION IN CONTRACT

■ While recognizing that a contract may be either express or implied (Civ. Code, § 1619), defendant argues a proceeding in quantum meruit does not evince a transaction within the definition of an implied contract; i.e., a contract "the existence and terms of which are manifested by conduct" (Civ. Code, § 1621). Rather, defendant argues, a quantum meruit action is quasi-contractual in nature, or implied in law to bring about justice without reference to the intent of the parties. (*Desny* v. *Wilder* (1956) 46 Cal.2d 715, 737 [299 P.2d 257]; *Division of Labor Law Enforcement* v. *Transpacific Transportation Co.* (1977) 69 Cal.App.3d 268, 275 [137 Cal.Rptr. 855].) So far, defendant is substantially correct; where recovery is sought on a quantum meruit theory in the face of an unenforceable express contract, the relief is deemed quasi-contractual in nature. (*Beley* v. *Municipal Court* (1979) 100 Cal.App.3d 5, 8 [160 Cal.Rptr. 508]; see also *Earhart* v. *Wil-*

*liam Low Co.* (1979) 25 Cal.3d 503, 506 [158 Cal.Rptr. 887, 600 P.2d 1344].) However, the distinction between a contract implied in fact and a quasi-contract avails defendant nothing.

Repeatedly, statutes relating to claims "arising upon contract" have been applied to quasi-contractual obligations. (See, e.g., *Smith* v. *Minnesota Mut. Life Ins. Co.* (1948) 86 Cal.App.2d 581, 590 [195 P.2d 457].) Moreover, for most purposes, an action to recover the reasonable value of services is considered an action on the contract. (See *Philpott* v. *Superior Court* (1934) 1 Cal.2d 512, 518-520 [36 P.2d 635, 95 A.L.R. 990] [criticized on other grounds in *Runyan* v. *Pacific Air Industries, Inc.* (1970) 2 Cal.3d 304, 312 (85 Cal.Rptr. 138, 466 P.2d 682, 41 A.L.R.3d 1422)]; *H. Russell Taylor's Fire Prevention Service, Inc.* v. *Coca Cola Bottling Corp.* (1979) 99 Cal.App.3d 711, 720 [160 Cal.Rptr. 411].) Hence, there is ample authority for viewing the instant proceeding as an action in contract within the meaning of Civil Code section 3287, subdivision (b). (See also *Zalk* v. *General Exploration Co.* (1980) 105 Cal.App.3d 786, 795 [164 Cal.Rptr. 647].)

## Fixing of Date as of Which Interest Is to Be Awarded

■ Defendant asserts the trial court erroneously and arbitrarily fixed as the date from which prejudgment interest could be awarded the date suit commenced. Civil Code section 3287, subdivision (b) provides: "Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed." Clearly, the language of subdivision (b) confers discretion to fix any date subsequent to filing of the action as that from which prejudgment interest should be awarded, as well as whether interest is warranted, but defendant's claim of error is premised on the theory that discretion to award interest and to fix the date from which interest should be awarded properly is confided to the jury. Inasmuch as this assertion is inconsistent with defendant's further assertion the trial court improperly confided the matter to the jury's discretion, we subsume the remainder of our discussion on the former point in our discussion of the latter.

## Placing the Issue of Interest Before the Jury

The clear intent of Civil Code section 3287, subdivision (b) is that discretion to decide whether interest should be awarded on an unliquidated claim arising upon an action in contract *and* to decide the date from which such interest should be awarded rests with the court, rather than the jury.

Indeed, subdivision (b) previously has been construed in this manner. (*A & M Produce Co.* v. *FMC Corp.* (1982) 135 Cal.App.3d 473, 496 [186 Cal.Rptr. 114]; *Esgro Central, Inc.* v. *General Ins. Co.* (1971) 20 Cal.App.3d 1054, 1064 [98 Cal.Rptr. 153].) Accordingly, it is apparent the trial court erred in confiding the issue of whether prejudgment interest should be awarded to the discretion of the jury, rather than exercising its own discretion.

We cannot adopt plaintiff's view the error was nonprejudicial, in that we cannot infer from the court's action in fixing the date from which prejudgment interest, if any, was to be awarded that the court would have exercised its discretion to award interest. Moreover, the error is fundamental, in the sense of where power to decide the issue lies and in the nature of the discretion brought to bear on the question. Judicial discretion must be guided and controlled by fixed legal principles; it is to be exercised impartially toward the end of substantial justice in accord with the spirit of the law. (*Martin* v. *Cook* (1977) 68 Cal.App.3d 799, 807 [137 Cal.Rptr. 434]; see also *Baggett* v. *Gates* (1982) 32 Cal.3d 128, 143 [185 Cal.Rptr. 232, 649 P.2d 874].) In other words, judicial discretion is an objective discretion.

In contrast, a jury's discretion often is necessarily subjective in nature, circumscribed only by the stricture that the jury may not indulge in uncertain conjecture or speculation. (See *Greater Westchester Homeowners Assn.* v. *City of Los Angeles* (1979) 26 Cal.3d 86, 103 [160 Cal.Rptr. 733, 603 P.2d 1329].) While a jury's discretion in awarding interest is to be exercised considering all the particular circumstances of the case (*Pavlovich* v. *Neidhart* (1954) 128 Cal.App.2d 559, 562 [275 P.2d 836]), it is reasonably probable the jury's subjective view of the circumstances will differ from the judge's objective assessment of the requirements of substantial justice. Placing the issue of the propriety of an interest award within the power of the jury deprived defendant of its right to judicial objectivity.

The judgment is reversed.

Lillie, J., and Hanson (Thaxton), J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 18, 1984.