[No. B204853. Second Dist., Div. Five. Jan. 23, 2009.]

PRO VALUE PROPERTIES, INC., Cross-complainant and Respondent, v. QUALITY LOAN SERVICE CORP., Cross-defendant and Appellant.

COUNSEL

McCarthy & Holthus and Daniel J. Goulding for Cross-defendant and Appellant.

No appearance for Cross-complainant and Respondent.

OPINION

**ARMSTRONG, J.**—Quality Loan Service Corp. (QLS) appeals the trial court's ruling regarding the interest rate to be applied to its monetary obligation to respondent Pro Value Properties, Inc. (Pro Value). We conclude that the trial court erred in its finding that QLS's obligation to Pro Value was contractual in nature, resulting in the accrual of interest at the annual rate of 10 percent. Rather, QLS's obligation to Pro Value was statutory in nature, from which it follows that the proper rate of interest is 7 percent.

## FACTUAL AND PROCEDURAL BACKGROUND

At the request of the beneficiary of a deed of trust on a residence (the Property), QLS instituted nonjudicial foreclosure proceedings, commencing with the recordation of a notice of default. QLS was not the trustee named in the deed of trust, and so was required to record a substitution of trustee pursuant to Civil Code section 2934a. This it neglected to do. Pursuant to a recorded notice of trustee sale, QLS sold the Property to the highest bidder, Pro Value, on June 9, 2005, for $842,000. QLS issued a trustee's deed of sale to Pro Value, which was subsequently recorded.

Some time thereafter, QLS and FV-1, the beneficiary under the deed of trust, realized that there was no recorded substitution of trustee naming QLS as trustee. Consequently, both QLS and FV-1 determined that the trustee's deed of sale was void.

In August 2005, FV-1 filed this lawsuit, alleging causes of action for cancellation of an instrument and declaratory relief. FV-1 named both QLS and Pro Value as defendants. Pro Value cross-complained against FV-1 for breach of contract, negligence and negligent misrepresentation, and against QLS for negligence.

In October 2005, QLS returned the $842,000 purchase price of the Property together with 7 percent interest to Pro Value. Pro Value rejected the proffered funds, claiming that it was the rightful owner of the Property.

Because Pro Value had rejected QLS's proffer of the $842,000 sales price, QLS continued to hold those funds. It therefore filed a complaint in interpleader, seeking a determination of who was entitled to the $842,000 proceeds realized from the sale of the Property.

QLS moved for summary judgment as to FV-1's complaint and Pro Value's cross-complaint. After hearing arguments on the motion on January 25, 2007, the trial court ruled that the trustee's sale was void and that the trustee's deed of sale which QLS issued to Pro Value was of no force or effect. The court further ruled that Pro Value was entitled to the return of the principal funds plus interest at the legal rate. The court requested additional briefing regarding the legal rate of interest to be applied in this case. Additionally, the trial court ruled against Pro Value on each of the causes of action alleged in the cross-complaint.

The day after the hearing, QLS again returned the $842,000 sales proceeds to Pro Value.

On May 14, 2007, the trial court issued its ruling on the pending interest issue. The court found that although the trustee's sale was void, and there was no contract as a matter of law, QLS owed interest at the rate of 10 percent—that is, the rate which applies to obligations founded on contract. The court also found that QLS's tender of funds to Pro Value in October 2005 was insufficient, since it included 7 percent interest instead of 10 percent interest. Consequently, the court found that QLS owed Pro Value 10 percent interest on the $842,000 "from the date of sale through the date [QLS] returns the purchase proceeds with 10% interest."

Judgment was entered on November 1, 2007, from which QLS timely appealed.

## DISCUSSION

■    As the trial court acknowledged, the California Constitution provides for prejudgment interest at 7 percent per annum. (Cal. Const., art. XV, § 1.) However, Civil Code section 3289 provides that the legal rate of interest

chargeable after the breach of a contract which does not stipulate an interest rate is 10 percent per annum. The trial court ruled that the latter interest rate applied, reasoning that there was a contract, albeit a void one, between QLS and Pro Value. It is this reasoning with which we disagree.

A nonjudicial foreclosure sale is a creature of statute. (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 334 [85 Cal.Rptr.3d 532] ["The Civil Code contains a comprehensive statutory scheme regulating nonjudicial foreclosure."].) The trustee's role in preparing for and conducting the sale is set forth in detail in Civil Code section 2924 et seq. "The trustee in nonjudicial foreclosure is not a true trustee with fiduciary duties, but rather a common agent for the trustor and beneficiary. (*Vournas*[ *v. Fidelity Nat. Tit. Ins. Co.* (1999)] 73 Cal.App.4th [668,] 677 [86 Cal.Rptr.2d 490].) The scope and nature of the trustee's duties are exclusively defined by the deed of trust and the governing statutes. No other common law duties exist. (*I. E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 287–288 [216 Cal.Rptr. 438, 702 P.2d 596] . . . ; *Residential Capital v. Cal-Western Reconveyance Corp.* (2003) 108 Cal.App.4th 807, 827 [134 Cal.Rptr.2d 162].)" (*Kachlon v. Markowitz, supra,* at p. 335.) In short, the trustee does not contract with the purchaser for the sale of the foreclosed property, but performs ministerial acts which, when properly executed, result in the transfer of title to the purchaser. Thus, the trial court was mistaken when it concluded that there was a (void) contract between QLS and Pro Value which did not stipulate an interest rate, resulting in the application of Civil Code section 3289's prescribed 10 percent rate of interest.

Here, the trustee did not properly execute the ministerial acts set forth by statute. This statutory violation resulted in a void sale, which required QLS to return the purchase price, with interest, to Pro Value. This QLS did in October 2005 by delivering to Pro Value a check for $842,000, plus a second check for $19,053.46, representing 7 percent interest on the principal amount. As the court in *Residential Capital v. Cal-Western Reconveyance Corp., supra,* 108 Cal.App.4th 807 stated: " 'Because the sale was void, the appropriate remedy for any damage to Plaintiff was the return of the purchase price, plus accrued interest. [Citations.] Because the purchase price plus interest was tendered to Plaintiff, it has sustained no damage and an essential element to all of its causes of action is not present.' " (*Id.* at p. 813.) Thus, QLS's obligations to Pro Value were fulfilled in full when, in October 2005, QLS tendered the purchase price together with 7 percent interest thereon to Pro Value.

## DISPOSITION

The judgment is modified to provide that interest accrued on the $842,000 foreclosure sale proceeds at the rate of 7 percent per annum from June 9, 2005, through October 5, 2005. As modified, the judgment is affirmed. QLS is to bear its costs on appeal.

Turner, P. J., concurred.

**MOSK, J.,** Concurring.—I concur.

In *Residential Capital v. Cal-Western Reconveyance Corp.* (2003) 108 Cal.App.4th 807 [134 Cal.Rptr.2d 162] (*Residential Capital*), the trustee in a nonjudicial foreclosure action accepted the bidder's bid at auction but refused to issue the trusee's deed because, unbenownst to the trustee, the trustor and beneficiary had agreed to postpone the sale. (*Id.* at p. 811.) The trustee refunded the purchase price plus interest (at an unspecified rate). (*Id.* at p. 813.) The bidder sued for, among other things, breach of contract, arguing that the acceptance of its bid created a purchase-sale contract that, although voidable because of the defect in the foreclosure proceedings, was not void, and that the bidder was therefore entitled to contract damages measured by the difference between the bid and the fair market value of the property. (*Id.* at pp. 813–817.) The Court of Appeal rejected the bidder's argument, reasoning that nonjudicial foreclosure proceedings are "comprehensively regulated by the detailed statutory scheme set forth in section 2924 et seq., which is not based on common law contract principles." (*Id.* at p. 821.) It would be inconsistent with the policies underlying that statutory scheme to conclude that "although a postponement of the sale occurred and the trustor was not bound by the sale, a separate conflicting contractual sale obligation nevertheless came into existence on its behalf against the trustee and beneficiary." (*Id.* at p. 822.)

Accordingly, the court in *Residential Capital* held that the bidder's rights were not governed by common law contract principles, but were determined by "principles of interpretation of the statutory scheme setting forth the rules of trust deed nonjudicial foreclosure sales." (*Residential Capital, supra,* 108 Cal.App.4th at pp. 820–821; see also *California Golf, L.L.C. v. Cooper* (2008) 163 Cal.App.4th 1053, 1070–1071 [78 Cal.Rptr.3d 153] (*California Golf*) [availability of particular remedy determined by consideration of "the *policies* advanced by the statutory scheme, and whether those policies would be frustrated by the allowance of the additional remedy"]; *I. E. Associates v.*

*Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 285 [216 Cal.Rptr. 438, 702 P.2d 596]; *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 834 [30 Cal.Rptr.2d 777].) The remedy for a bidder when a foreclosure sale is procedurally defective is restitution of the purchase price plus interest. (*Residential Capital, supra,* 108 Cal.App.4th at p. 823.) Thus, "[t]he trustor is protected from unauthorized foreclosure and loss of its property and the sanctity and finality of foreclosure sales is maintained without significant prejudice to the high bidder." (*Id.* at p. 824.)

In the instant case, although there was an express purchase-sale agreement between the bidder and the trustee, under the rationale of *Residential Capital, supra,* 108 Cal.App.4th 807, that agreement did not give rise to a contract governed by common law contract principles. The bidder's right to restitution from the trustee is thus not based on their *agreement,* but is relief provided by the statutory scheme regulating nonjudicial foreclosures. The claim is therefore not a contract cause of action under Civil Code section 3289.

The decision in *California Golf, supra,* 163 Cal.App.4th 1053, is not inconsistent with this conclusion. In *California Golf,* the court noted that "California courts have repeatedly allowed parties to pursue additional remedies for misconduct arising out of a nonjudicial foreclosure sale when not inconsistent with the policies behind the statutes." (*Id.* at p. 1070.) In this case, however, there is no dispute that restitution is the appropriate *remedy.* Rather, the bidder seeks to rely upon an alternative *cause of action.* But notwithstanding the label the bidder has put on its claim, its cause of action is not a "cause of action in contract."

There is authority that an action to recover quasi-contractual relief—such as an action to recover in quantum meruit for the reasonable value of goods or services—is a "cause of action in contract" under Civil Code section 3287, subdivision (b). (*George v. Double-D Foods, Inc.* (1984) 155 Cal.App.3d 36, 46–47 [201 Cal.Rptr. 870]; see *Zalk v. General Exploration Co.* (1980) 105 Cal.App.3d 786, 794–795 [164 Cal.Rptr. 647] [dictum]; Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2008) ¶ 17:188, p. 17-145.) Presumably, the same reasoning should apply to Civil Code section 3289. " 'Quasi-contract' is simply another way of describing the basis for the equitable remedy of restitution when an unjust enrichment has occurred." (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 388, fn. 6 [20 Cal.Rptr.3d 115].) In this case, however, the bidder cannot invoke principles of quasi-contract because there was an express agreement between the bidder and trustee. When there is an express agreement, there is no need to imply a

contract—i.e., quasi-contract. (*Id.* at p. 388.) In any event, as noted above, the bidder's right to restitution is relief provided by the statutory scheme regulating nonjudicial foreclosures, and not from any express or implied contract.